IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH WALSH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16 C 3823 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Maria Valdez |
| Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's petition to reverse the Commissioner's decision is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 30] is granted.

## PROCEDURAL HISTORY

Plaintiff filed his application for DIB on March 22, 2013, alleging disability beginning on March 22, 1978, his date of birth. His application was denied initially on March 22, 2013 and upon reconsideration on December 13, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"), which was

---

[1] Nancy A. Berryhill is substituted for her predecessor, Carolyn W. Colvin, pursuant to Federal Rule of Civil Procedure 25(d).

held on July 10, 2014. Plaintiff personally appeared and testified at the hearing and was represented by counsel. A vocational expert also testified.

On December 8, 2014, the ALJ denied Plaintiff's claim for DIB, finding him not disabled under the Social Security Act. After noting that Plaintiff met the insured status requirements through December 31, 2015, the ALJ proceeded through the five-step sequential evaluation process required by Social Security regulations. *See* 20 C.F.R. § 404.1520 and 416.902(a). At step one, the ALJ found that Plaintiff has engaged in substantial gainful activity since March 22, 1978, his alleged onset date. From 2000 to 2010, Plaintiff worked as a purchasing agent research associate, budget analyst, and office clerk. The ALJ found that, although he has engaged in substantial gainful activity since his alleged onset date (the date of his birth), an unadjudicated period exists, since he stopped his research job in 2010, and the ALJ continued on to the remaining steps.

At step two, the ALJ determined that Plaintiff had the following severe impairments: cerebral palsy with paresthesia in the right lower extremity; history of left knee surgery; bilateral nystagmus; anxiety disorder; history of attention deficit disorder; depression; obsessive-compulsive disorder; and overweight. The ALJ concluded at step three that the impairments, alone or in combination, did not meet or medically equal the severity of a listed impairment. *See* C.F.R. Part 404, Subpt. P, App. 1. The ALJ analyzed Plaintiff's impairments under listing 1.02 (major dysfunction of a joint); 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint); 11.07 (cerebral palsy); 12.02 (neurocognitive

disorders); 12.04 (depressive, bipolar and related disorders); and 12.06 (anxiety and obsessive-compulsive disorders).

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, subject to the following limitations: using his lower extremities no more than occasionally to push/pull and operate foot controls; reaching in front or overhead no more than frequently; no work requiring good detailed vision and/or frequent reading or work requiring more than occasional viewing of a computer/television screen/monitor or to look at one for more than twenty minutes at a time; a sit-stand option, with the ability to stand for one to two minutes after sitting for forty-five minutes; no exposure to work hazards such as unprotected heights and dangerous moving machinery; no more than occasional contact with the general public, coworkers, or supervisors; and work limited to three to four step simple repeated routine tasks. Based on this RFC, the ALJ concluded that Plaintiff was unable to perform any of his past relevant work. However, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that the plaintiff could perform, including hand sorter, assembler, and packer, leading to a finding that he was not disabled under the Social Security Act.

The Social Security Administration Appeals Council denied Plaintiff's request for review on February 2, 2016, leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. §

405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

## **DISCUSSION**

### I.     **JUDICIAL REVIEW**

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an

4

accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## II.  ANALYSIS

Plaintiff argues that the ALJ's decision warrants remand because she: (1) should have had a medical expert testify at the hearing; (2) erred in rejecting medical source opinions; and (3) improperly concluded that Plaintiff retains an ability to work based on his daily activities.

5

## A. Testifying Medical Expert

Certain evidence in the record, including a June 26, 2014 ophthalmological examination and a July 12, 2013 RFC form completed by Plaintiff's treating psychologist, Dr. Beresford, were not available to the state agency consultants, whose mental and physical examinations both took place on June 18, 2013.[2] Plaintiff argues that the ALJ was required to have a medical expert testify at the hearing in order to analyze this evidence with respect to listing 11.07C (cerebral palsy). In order to meet this listing, a claimant must show he has cerebral palsy along with "[s]ignificant interference in communication due to speech, hearing, or visual deficit." C.F.R. Part 404, Subpt. P, App. 1 (11.07); *see also id.* (11.00E.2) ("Under 11.07C, we need evidence documenting that your cerebral palsy has resulted in significant interference in your ability to speak, hear, or see. We will find you have 'significant interference' in your ability to speak, hear, or see if your signs, such as aphasia, strabismus, or sensorineural hearing loss, seriously limit your ability to communicate on a sustained basis.").

Social Security Ruling ("SSR") 96-6p[3] provides that an ALJ "must obtain an updated medical opinion from a medical expert . . . [w]hen additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Counsel may change the State agency medical or psychological consultant's

---

[2] Dr. Beresford also wrote a letter dated February 2015, after the ALJ rendered her decision, and that letter was submitted to the Appeals Council.

[3] Interpretive rules, such as SSRs, do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

6

finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."[4] SSR 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996).

According to Plaintiff, the state agency physicians did not have the benefit of a complete record in analyzing his poor vision with respect to this listing. Specifically, Plaintiff contends that those physicians did not consider evidence demonstrating that his vision had deteriorated, was not correctable, would impact his ability to carry out tasks involving hand and eye coordination, and that his depth perception was not within normal limits and had significantly decreased. He argues that this evidence was directly relevant to consideration of listing 11.07C, and it was reversible error, pursuant to SSR 96-6p, for the ALJ not to have called a medical expert to testify about it.

Defendant responds that the decision whether to require a medical expert to testify is entirely within the ALJ's discretion under SSR 96-6p. Because the ALJ in this case did not believe the new evidence would change the agency consultants' findings, no updated medical opinion was required. The Court agrees that the decision whether to seek out another expert opinion is within the sound discretion of the ALJ. Plaintiff has failed to argue or prove that the ALJ's exercise of that

---

[4] In his reply, Plaintiff argues that the SSR *requires* an updated medical expert opinion in this case, quoting its requirement that one "must be obtained by the administrative law judge or the Appeals Council before a decision of disability based on medical equivalence can be made." SSR 96-6p, 1996 WL 374180, at *1. The Court agrees with Defendant that this requirement does not apply when the ALJ is making a decision of *non*-disability based on medical equivalence. Otherwise, the above guidance giving the ALJ the discretion whether to obtain an updated medical opinion in cases finding no equivalence would be nonsensical. *See id.* at 3-4. This reading is also consistent with the SSR's other requirement that the ALJ obtain a medical expert's opinion if the ALJ believes the symptoms and laboratory findings support equivalence to a listing, but no additional medical evidence is received. *See id.*

7

discretion in this case was unreasonable or not supported by substantial evidence. Furthermore, Plaintiff has not even argued that his vision problems meet the listing, making any potential error harmless. The only limitation Plaintiff offers is that the vision impairments "would impact his ability to carry out tasks involving hand and eye coordination." (*See* Pl.'s Mem. at 9.) Listing 11.07C, however, requires that the visual limitation "seriously limit[s his] ability to communicate on a sustained basis." C.F.R. Part 404, Subpt. P, App. 1 (11.00E.2). Plaintiff has not explained how his visual difficulties have limited his ability to communicate, which is required to come within the scope of listing 11.07(C).

Plaintiff also makes an undeveloped, conclusory argument that a medical expert should have opined about the updated statement from his treating psychiatrist Dr. Beresford and its effect on the analysis of listing 11.07(C). Specifically, Plaintiff finds significant Dr. Beresford's notations that he had difficulty completing tasks, accomplishing goals, and tolerating stress. In addition, Plaintiff believes a medical expert should have been consulted to analyze, in the context of listing 11.07 and its medical equivalent, Dr. Beresford's opinion that Plaintiff's medication could affect his motor functioning.

Plaintiff has again failed to offer any reason that his limitations in maintaining a schedule and completing tasks relate to listing 11.07(C)'s focus on speech, hearing, or visual deficits leading to communication problems. Moreover, if he intended to analyze this evidence under another subsection, the argument nevertheless fails. Listing 11.07(B) requires a marked limitation in physical

functioning and a marked limitation in one of four categories, including "[c]oncentrating, persisting, or maintaining pace." C.F.R. Part 404, Subpt. P, App. 1 (11.07B.3). Plaintiff has not shown that Dr. Beresford's suggestion of a possible effect on motor functioning is equivalent to a marked limitation.

B. <u>**Treating Physician Rule**</u>

Plaintiff next contends that the ALJ improperly discounted the opinions of his treating physicians, substituting her lay opinion instead. An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739. And even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308. The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See id.*

Plaintiff maintains that the ALJ improperly rejected the opinion of his treating ophthalmologist regarding his visual limitations. Although the ALJ stated she gave little weight to a July 2012 opinion that Plaintiff "could never read fine

9

print, work around unprotected heights, [and] perform activities that require good distant, detailed vision," (R. 17), she nevertheless included in the RFC limitations on work requiring detailed vision or unprotected heights. Plaintiff has therefore not shown any harm from the ALJ's alleged error.

Plaintiff also faults the ALJ for giving little weight to Dr. Beresford's psychiatric opinion. The ALJ's reasons for giving Dr. Beresford's opinion little weight included: he reported episodes of decompensation, without evidence of any hospitalizations or inpatient treatment; he opined that Plaintiff would miss three days of work a month, which was not consistent with evidence in the record that Plaintiff engaged in a number of activities; and there were no treatment notes reflecting Dr. Beresford's July 3, 2014 opinion that Plaintiff had persistence and concentration problems that would prevent him from working. According to Plaintiff, the ALJ's proffered reasons for discounting Dr. Beresford's opinion were insufficient, because the opinion was based upon a lengthy treatment history; and as Dr. Beresford explained to the Appeals Council, his clinical notes were not written with an eye toward a disability determination.

Plaintiff's arguments are not persuasive. Although he argues that there is an explanation for the lack of treatment notes, he does not dispute that they were in fact insufficient. Plaintiff also fails to explain the major inconsistency between Dr. Beresford's statement that Plaintiff experienced decompensation and the lack of evidence in the record supporting any such episodes. Therefore, despite the length

10

of the treating relationship, substantial evidence supported the ALJ's decision not to give great weight to Dr. Beresford's opinion.

### C. <u>Activities of Daily Living</u>

Finally, Plaintiff argues that the ALJ improperly found he was not disabled based on his activities of daily living, such as volunteer work and going shopping, to church, and prayer groups. Plaintiff maintains that this was insufficient to find he was capable of full-time employment, as his volunteer attendance was sporadic, only once or twice a week.

It is true, as Plaintiff asserts, that the Seventh Circuit has criticized the reliance on limited daily activities in finding against a claimant's alleged limitations, "repeatedly caution[ing] that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *see also Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013) However, daily activities are nonetheless a factor that an ALJ is required to consider by the regulations and the Administration's guidance, *see* 20 C.F.R. § 404.1529(c)(3)(i), and an ALJ does not err simply by doing so. *See Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007).

Plaintiff's brief fails to direct the Court to the reasons he does not volunteer more consistently, nor does it explain that these reasons would preclude him from competitive employment at a sedentary RFC level, with the additional restrictions imposed by the ALJ. It is not the Court's function to scour the record to find out the

answers to those questions or otherwise to make arguments in support of Plaintiff's disability. The record thus contains uncontradicted evidence that Plaintiff engages in a number of activities outside the home and that he travels independently to those activities. Without any argument minimizing those activities, the Court must find that substantial evidence supports the ALJ's determination that Plaintiff's daily activities reflect an ability to work at the sedentary level with the stated restrictions.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's petition to reverse the Commissioner's decision is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 30] is granted.

**SO ORDERED.**                  **ENTERED:**

**DATE:**     **July 9, 2018**                                         
**HON. MARIA VALDEZ**
**United States Magistrate Judge**